# BYERS et ux. v. WARD et al.—178 S. W. (2d) 231.

Eastern Section.   December 28, 1942.

Rehearing denied March 12, 1943.

Petition for Certiorari denied by Supreme Court, July 3, 1943.

Petition for Certiorari denied by United States Supreme Court, January 3, 1944.

140

Allen, Nelson & Allen, of Elizabethton, Burrow & Burrow, of Bristol, and Cox, Taylor, Epps & Miller, of Johnson City, for complainants appellants.

Vines, Hawkins & Bryant, of Johnson City, for defendants appellees.

HALE, J.  Complainants brought this suit to cancel a deed of trust executed by them November 6, 1930, on lands in Washington County, to secure J. M. Ward and Robert May as accommodation endorsers for H. V. Byers on certain notes executed by him for the purchase of lands in Carter County.  Chancellor Robertson, sitting by interchange with Chancellor Miller, found against complainants and they appealed.

The theory of complainants is that the indebtedness in question was extinguished by a scaledown agree-

ment allegedly made when complainants obtained a loan from The Federal Land Bank in 1934; or, in the alternative, that it was maintained in such a manner as to constitute a fraud against the Federal Land Bank and was in violation of public policy and void. A determination of this question requires a chronological development of the facts.

In 1919 Mr. Byers purchased a farm in Carter County, which was incumbered by a deed of trust for five thousand dollars, which he assumed. In 1927 he and his wife conveyed this property to Messrs. J. M. Barnes and E. E. Hathway, who paid three thousand dollars in cash, executed lien notes (1 for $1,000 due in 6 mos. and 4 for $3445 each, due in 1, 2, 3 and 4 years), and assumed the debt due on the aforesaid deed of trust.

Mr. Barnes died in 1929. One of the notes for $3445 executed in the last mentioned transaction had been transferred by Mr. Byers to a bank at Limestone. Suit was then brought in the name of the bank and Mr. Byers in 1930 to recover on the purchase money notes in default and a decree of sale was obtained at the May term 1930 and the land was subsequently bid in by the bank at a sum which would have virtually operated as an extinguishment of the remainder of the notes held by Mr. Byers. He became dissatisfied with the turn of events and went to see Mr. Ward, a man of considerable means and good financial judgment and with whom he had dealt in the past and who referred him to his attorney Mr. Robert May, who contacted the attorney for the bank and succeeded in having the bids opened and the property then sold to Mr. Byers, who gave three notes for $1457 each, to be secured by purchase money lien notes and giving Ward and May as endorsers thereon and who were

secured by the deed of trust aforesaid on the Washington County property. This sale was made subject to the balance due on the deed of trust before referred to, and at the time the sale was made it was believed there was a considerable equity in the land. Mr. May represented Mr. Byers in an action against the estate of Mr. Barnes to recover a deficiency judgment on the notes executed when he and Mr. Hathway purchased the land in question. It was first believed that Barnes' estate was solvent, but as the financial debacle of that period became greater and greater it resulted that only a small amount was realized on this claim and about which there is conflicting evidence. We are not called upon to settle this question inasmuch as Mr. May is not a party to the suit and this issue is merely incidental to the principal controversy.

After this sale was confirmed to him, Mr. Byers and his wife gave Mr. Ward a deed of trust on this same property to secure the payment of eight hundred and twenty-six dollars he had advanced to protect Byers' interest. Land values became more insubstantial and Mr. Byers was not able to sell this property; the supposed equity did not materialize and he could not meet the purchase money notes given by him, and on November 27, 1933, judgment was entered against him and his endorsers thereon.

On October 13, 1933, Mr. and Mrs. Byers applied to the Federal Land Bank for a loan of six thousand dollars on this property and in the application and apparently in answer to the question as to the amount for "reducing and refinancing an existing mortgage" is set out the following indebtedness: J. M. Ward—$900; Union Central Life Insurance Company—$2800; vendor's lien held by Chancery Court—$3462.12; total—$7162.12, and then

is made the significant statement, "Applicant will pay difference by transferring liens." The $2800 due the Union Central Life Insurance Company was the balance on the original $5000 assumed by Byers in 1919. The application also disclosed the applicants owned the land in question in Washington County encumbered by a first mortgage of two thousand dollars and it is recited it is encumbered by a second mortgage to secure the indebtedness on the Carter County land. Under the rules of the Federal Land Bank the borrower would be required to take five per cent of the loan in stock in the bank or association and would be charged with certain other deductions and expenses so that had the six thousand dollar loan been approved, there would have been received, net, about $5500, leaving a deficit or difference of approximately $1660 to be paid or settled by transfer of liens.

The application for six thousand dollars was rejected, but after considerable delay was approved for five thousand dollars and which, after deductions, netted in round figures, forty-five hundred dollars. This was in June, 1934. On January 8th, 1934, and while this application for a loan was pending, the Union Central Life Insurance Company sold and transferred its first mortgage on this land to Mr. Ward for twenty-five hundred dollars. There was due upon it at that time, in round numbers, twenty-nine hundred dollars. On June 4, 1934, when Mr. Ward was the owner of this mortgage indebtedness, there was given to him a form instrument designated "creditors' statement of indebtedness and authority for payment," and which is as follows:

"J. M. Ward, Jonesboro, Tennessee, June 4th, 1934. You hold note, etc., as an obligation of H. V. Byers for

$4215.16. Will you kindly state below the earliest date said indebtedness can be paid, giving the amount which you will accept in full satisfaction of the same on or before said date, or thereafter'',.

and in response thereto Mr. Ward signed the statement on the bottom of such form as follows:

"To      S. J. Lewis                                    Date

"Secretary-Treasurer or Loan Correspondent

June 4th, 1934.

"The amount of the indebtedness referred to above is t$1100.49 as unpaid principal and $_____ unpaid interest up to the _____ day of _____ 193___, upon which date or after which date said debt can be paid. Said indebtedness is evidenced by a   Notes etc.

(Note, Account, etc.

due on the Past due of _____ 193___.

"The debts are secured by deeds of Trust mortgage

(is or is not)                              (Real Estate or Chattel)

which is recorded in book _____ page _____ of the records of _____ County, State of _____.

"Upon payment to the undersigned of $1100.49 in bonds of the Federal Farm Mortgage Corporation, at face value and/or cash at the option of the Federal Land Bank, and/or the Land Bank Commissioner, on or before the _____ day of _____, 193___, or if paid thereafter, by including interest at the rate of _____ percent per annum from said date to the date of the payment, said sum will be accepted in full satisfaction of this claim. The undersigned creditor further agrees that directly or indirectly no note, mortgage, or other consideration will be received from the debtor, incident to such acceptance, other than the consideration paid by The Federal Land Band and/or the Land Bank Commissioner, and that when said consideration is paid all claims of this creditor

against the above named debtor will have been satisfied in full. No person, firm or corporation other than the undersigned is the owner of any interest in said indebtedness.

"Check for portion of debt payable should be made payable to J. M. Ward of Jonesboro, Tenn., and forwarded to the Secretary-Treasurer of the Carter County National Farm Loan Association for delivery.

"(Signed)   J. M. Ward,

"Creditor."

It is around this transaction that a furious contest has revolved. Complainants insist this was an accord and satisfaction and further it would be a fraud on The Federal Land Bank and contrary to public policy to let Mr. Ward collect on any excess. Mr. Ward claims, and is corroborated by Mr. May who was acting as attorney for both parties and who is supported by the statement in Mr. Byers' application that the difference would be paid by the transfer of liens, that this was not to be in full of his debt; that it was agreed that the proceeds of this loan were to be used in paying the first lien of the insurance company then held by Ward amounting to twenty-nine hundred dollars approximately, and the deed of trust held by Mr. Ward for eight hundred dollars which, with other advancements, caused him to be due approximately eleven hundred dollars; that the balance was to be applied on the purchase money notes aforesaid; that the remainder due on these notes, up to an amount sufficient to pay the Limestone Bank, would be paid by Ward who would be protected and secured by the deed of trust theretofore given on the Washington County property when he and May became sureties on

the notes given by Mr. Byers for the purchase of the Carter County farm.

All of the incidental facts and circumstances tend to sustain Mr. Ward. Clearly, it was contemplated by the parties that when the six thousand dollar loan was applied for there would not be a sufficiency to discharge the lien indebtedness on this farm and that the difference would be paid or settled by a transferring of liens. This, as before pointed out, was written in the application signed by Mr. and Mrs. Byers and apparently is in the same handwriting as that used in the remainder of this application but which evidently is not in the handwriting of the applicants. In this application there is detailed the crops raised on this farm, the value of the improvements, the terms of the rental contract with the tenant and information of that character which, of necessity, must have come from Mr. Byers, regardless of whose handwriting it is in, and, as found by the Chancellor, we think this application correctly embodied the understanding of the parties at the time and further that it charged the Federal Land Bank with knowledge of the proposed adjustment of the indebtedness between the parties. The uncontradicted proof shows that Mr. May advised the officials at Elizabethton handling the loan that the balance on indebtedness due Mr. Ward was not to be extinguished but was to be retained against the Washington County land, and that these officials said in substance they were not interested therein, that their only interest was to see the Carter County land was cleared of liens. There is no suspicion of bad faith or collusion in this respect. Certainly, under this record The Federal Land Bank would not claim there was any concealment, misrepresentation or bad faith on the part of either Mr. Byers or Mr. Ward. Each made full disclosure. Complainants

contend that the proceeds of the forty-five hundred dollar loan were to be applied, first to the payment of the purchase money notes in full, that the balance, approximately a thousand dollars, was to be paid to Ward in extinguishment of his deeds of trust; in other words that his liability as accommodation endorser would be extinguished and that he would receive one thousand dollars, to fully discharge the mortgage indebtedness of approximately four thousand dollars. The net proceeds of the loan were paid to Mr. Ward, who thereupon executed releases covering both deeds of trust he held and he then gave the Clerk and Master at Elizabethton his check to cover the amount due the Limestone bank. Shortly thereafter Mr. May prepared and presented to Mr. Byers for execution, a note for $3010.48 and deed of trust on this Washington County property to cover balance claimed by Ward. According to Mr. May and his associate, Mr. Phlegar, a Notary Public who was to take the acknowledgment, Mr. Byers said in substance that Mr. Ward already had a mortgage and there was no use of executing another, that his wife was sick and he would not bother her with it, that he would turn the farm over to Mr. Ward to settle the debt. This conversation is denied by Mr. Byers and his son, who claimed to be present. It seems to us we should adopt the statement of Mr. May and his associates, as they are wholly disinterested. Then too, the record as a whole, reflects the desperation of an improverished debtor confronted with losing his home in his old age. We are inclined to believe this contention had its genesis in the original belief that the Barnes estate would pay a substantial amount on the deficiency judgment and when it failed to do so Mr. Byers sought desperately to mend his fortunes in another manner.

The learned Chancellor made a very full finding of facts, setting forth all these transactions and matters in greater detail and we concur in such finding.

It is argued that parol evidence was inadmissible to alter, vary, contradict or explain away the statements made in the "creditors' statement of indebtedness" signed by Mr. Ward. This has an element of unconscious humor in it in that the whole case of complainants is based upon their effort to alter, vary, contradict or explain away the statement in their application that the difference between the loan and indebtedness would be paid by transferring liens.

We do not think the parol evidence rule applicable. In the first place the "creditors statement" made by Mr. Ward must be read in the light of the statements made in the application for the loan, and certainly the language used in each of these papers is vague, uncertain, obscure, or ambiguous, and thus open to explanation by parol evidence. 32 C. J. S., Evidence, Sec. 959, p. 892. In the next place the "creditors statement" was not contractual in its nature, but was at most in the nature of an inchoate receipt. While its statements could be looked to as admissions, they certainly could be explained by parol evidence. Kenner v. City Nat. Bank, 164 Tenn. 119, at pages 137, 138, 46 S. W. (2d) 46.

It is said that Mr. Byers is due an accounting for the money collected from the Barnes estate. This was collected by his attorney Mr. May, who contends he got only $500 which he holds subject to adjustment of his charges thereagainst. He is not a party to this suit, nor is this claim of any concern to Mr. Ward who is shown in this record to have been the benefactor and protector of the complainants.

The decree of the Chancellor is affirmed in all things. The injunction against the sale of the lands will be dismissed at the expiration of the time allowed for filing petition of certiorari, and, if such petition is filed, until acted upon by the Supreme Court.

Cost of appeal will be paid primarily by appellants, but if not collected from them then secondarily by the appellee Ward. We do this for the reason that due to the unusual way this matter was handled Mr. Ward would have at some time been required to use the machinery of the court to protect and assert his rights, and as a matter of right he should pay the cost if not collected otherwise.

## On Petition to Rehear.

█ Counsel for appellants have filed a petition to rehear, insisting among other things there is presented a Federal question under 12 U. S. C. A., Sec. 1467(a). An examination of the Code will disclose this section applies to the Home Owners Loan Corporation. The loan in question was not obtained from this corporation but was made by the Federal Land Bank and Land Bank Commissioners. We do not believe petitioners can base any c'aim upon this section.

The remaining questions raised by the petition were all considered and decided adversely to petitioners in the opinion filed herein on December 28, 1942. In view of the zeal and ability with which counsel presented these contentions, we have again considered these questions and are forced to adhere to our original opinion. Any discussion of these matters would be mere repetition.

It results, that we are forced to and hereby overrule the petition to rehear.